IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY ESTON TISDOL, JR., | : Civil No. 1:26-CV-0400 |
| Plaintiff, | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, Commissioner of Social Security, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

Larry Tisdol filed an application under Titles II and XVI of the Social Security Act for disability and disability insurance benefits and supplemental security income on May 22, 2023.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Tisdol was not disabled from his alleged onset date of August 16, 2022, through March 27, 2025, the date of the ALJ's decision.[2]

Tisdol now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we agree

[1] Tr. 14.
[2] Tr. 11-32.

and conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

Tisdol filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to a stroke and type 2 diabetes.[3] Tisdol was 47 years old at the time of his alleged onset of disability, had at least a high school education, and had past work as a machine operator.[4]

An ALJ held a hearing on Tisdol's disability application on January 29, 2025.[5] Tisdol and a Vocational Expert ("VE") both appeared and testified at this hearing.[6] Following this hearing, on March 27, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[7] The ALJ first concluded that Tisdol met the insured status requirement through December 31, 2027, and had not engaged in

[3] Tr. 82.
[4] Tr. 26.
[5] Tr. 42-79.
[6] *Id.*
[7] Tr. 11-32.

substantial gainful activity since his alleged onset date of August 16, 2022.[8] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of stroke, mild neurocognitive disorder, expressive and receptive aphasia, asthma, ischemic cardiomyopathy, status post catheterization, and anxiety.[9] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10]

Between Steps 3 and 4, the ALJ then concluded that the plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with various exertional and nonexertional limitations to accommodate his impairments.[11] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[12] Ultimately, the ALJ concluded that the plaintiff was not as limited as he alleged.

---

[8] Tr. 16-17.
[9] Tr. 17.
[10] Tr. 17-20.
[11] Tr. 20.
[12] Tr. 20-26.

Having made these findings, the ALJ found at Step 4 that Tisdol could not perform his past relevant work but found at Step 5 that he could perform the occupations of marker, router, and printing collator.[13] Accordingly, the ALJ found that Tisdol had not met the stringent standard prescribed for disability benefits and denied his claim.[14]

This appeal followed.[15] On appeal, Tisdol argues that the ALJ erred by failing to include any limitations on the use of his right upper extremity.[16] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will remand this matter for further consideration by the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-

[13] Tr. 27.
[14] Tr. 28.
[15] Doc. 1.
[16] Doc. 10.

maker are supported by substantial evidence in the record.[17] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[19] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[20]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[21] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[22] The ALJ is not required to use "magic" words, but rather must discuss the evidence

---

[17] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[18] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[20] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[21] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[22] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

and explain the reasoning behind his or her decision with more than just conclusory statements.[23] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[24]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[25] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[26]

In making this disability determination, the ALJ follows a five-step evaluation.[27] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe

---

[23] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[24] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[25] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[26] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[27] 20 C.F.R. §§404.1520(a), 416.920(a).

impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[28]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[29] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[30] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[31]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

---

[28]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[29] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[30] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[31] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[32] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[33]

B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[34] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[35] Supportability means "[t]he more relevant the objective medical evidence and supporting

[32] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[33] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[34] 20 C.F.R. § 404.1520c(c).
[35] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[36] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[37]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[38] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[39] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[40] On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[36] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[37] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[38] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[39] *Mason*, 994 F.2d at 1066.
[40] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[41]

C. <u>This Case will be Remanded.</u>

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[42] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[43] After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Tisdol contends that the ALJ erred when he failed to include limitations on the use of Tisdol's right upper extremity in the RFC. The plaintiff points to the opinion of Certified Registered Nurse Practitioner ("CRNP") Cywinski, who opined in October of 2023 that Tisdol could only occasionally use his right upper extremity.[44] At Tisdol's hearing, the VE

---

[41] *Cummings*, 129 F. Supp. 3d at 214–15.
[42] *Cotter*, 642 F.2d at 704.
[43] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).
[44] Tr. 1094.

testified that such a limitation would eliminate the jobs he identified in response to the ALJ's hypotheticals.[45]

We conclude that the ALJ's decision to discount this limitation is not adequately explained. We note that the ALJ found CRNP Cywinski's opinion less than persuasive and specifically found the upper extremity limitation unsupported by CRNP Cywinski's own examination. But in doing so, the ALJ misstated some of CRNP Cywinski's examination findings. The examination notes indicate that Tisdol exhibited 75 percent grip strength in his right hand, diminished right hand and finger dexterity, and difficulty manipulating objects with his right hand.[46] In discounting the opinion's upper extremity limitation, the ALJ erroneously recited that CRNP Cywinski's examination revealed intact dexterity.[47] Further, the ALJ failed to acknowledge CRNP Cywinski's finding that Tisdol had difficulty manipulating objects with his right hand, which appears to be at least somewhat consistent with the state agency consulting physicians' opinions, which found that Tisdol was

[45] Tr. 75.
[46] Tr. 1090.
[47] Tr. 24.

limited to frequent fingering with his right hand.[48] The ALJ further discounted this fingering limitation provided by the state agency consultants, reasoning that Tisdol did not attend physical therapy for his right-sided weakness and treatment notes indicated his strength was "generally intact or only slightly reduced[.]"[49]

Based on the above, we cannot conclude that the ALJ's explanation for discounting all of the right upper extremity limitations is supported by substantial evidence. While it is true that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations[,]"[50] an ALJ may not rely on his own lay interpretation of the evidence to reject every medical opinion in the record.[51] Here, the ALJ's finding was based on a misstatement of CRNP Cywinski's examination findings and his own lay conclusion that

---

[48] *See* Tr. 86-88, 110-13.
[49] Tr. 26.
[50] *Chandler*, 667 F.3d at 361.
[51] *See Eric D.B. v. O'Malley*, 2024 WL 1356712, at *6 (M.D. Pa. Mar. 29, 2024) (citation omitted) (noting the change in the regulations for evaluating medical opinion evidence but further recognizing that "ALJs are still required to base their decisions on competent medical evidence, as opposed to lay speculation.").

the state agency consultants' fingering limitation was unsupported by general examination findings of normal strength and because Tisdol did not receive physical therapy. Thus, in our view, the ALJ appears to have erroneously substituted his own lay interpretation of the evidence to discount these providers' limitations.

This error is not harmless. Social Security appeals are subject to harmless error analysis, under which a remand is warranted only if the error "prejudices a party's 'substantial rights[,]'" meaning the error "likely affect[ed] the outcome of the proceeding, . . ."[52] The plaintiff carries the burden of proving that an error was harmful.[53] Here, the VE testified that a limitation to occasional use of the right upper extremity would eliminate the work he identified as work the hypothetical claimant could perform.[54] Thus, we cannot say the ALJ's error in discounting this limitation is harmless where including that limitation could have resulted in a favorable Step 5 determination for the plaintiff.

---

[52] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).
[53] *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).
[54] Tr. 75.

Accordingly, a remand is required for further consideration of this issue. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.

Submitted this 4th day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge